UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST SHIPPING AND TRANSPORT, INC.,

      Plaintiff,

  - against -

GOLDEN FLEECE MARITIME INC.,

      Defendant.

BLANCA SHIPMANAGEMENT COMPANY,

Third-Party Claimant,

------------------------------------------------------------X

07 Civ. 11147 (SAS)

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY BLANCA SHIPMANAGEMENT COMPANY'S AND DEFENDANT GOLDEN FLEECE MARITIME INC.'S MOTIONS TO VACATE MARITIME ATTACHMENT

Lennon, Murphy & Lennon, LLC
Attorneys for Defendant Golden Fleece Maritime Ltd.
Attorneys for Third Party Claimant Blanca Shipmanagement Company
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**....................................................................................1

**FACTS**..........................................................................................................................2

POINT I

**IT IS PLAINTIFF'S BURDEN TO PROVE
WHY THE ATTACHMENT SHOULD NOT BE VACATED**.....................................5

POINT II

**THE ATTACHMENT OF FUNDS RESTRAINED BY
GARNISHEE CITIBANK MUST BE VACATED BECAUSE
THE FUNDS BELONG TO CLAIMANT BLANCA**....................................................8

    A. A Rule B attachment does not reach property in which the named Defendant does not have an attachable property interest. Where a Defendant assigns property to a third party, it no longer has an attachable property interest in those funds..........................................................................................................8

    B. The hire payments made by Indian Oil for the charter of the Elli were validly assigned to Blanca as of December 15, 2007...........................................................9

POINT III

**THE ATTACHMENT SHOULD BE VACATED
BECAUSE PLAINTIFF ABUSED THE ATTACHMENT REMEDY**........................12

**CONCLUSION**..........................................................................................................14

# TABLE OF AUTHORITIES

## Courts of Appeal

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)..............6, 7

*Winter Storm Shipping Ltd. v. TPI*, 310 F. 3d 23 (2d Cir. 2005)...........................7, 13, 14

## District Courts

*Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844 (S.D.N.Y. Fed 15, 1995)............................................................................................7

*Centauri Shipping Ltd. v. Western Bulk Carriers, KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007)....14

*Chiquita Int'l Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589 (S.D.N.Y. 2007)............................12

*Daikan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782 (S.D.N.Y. 1984).......9

*Dolco Invs. V. Mooriver Dec. Ltd*, 486 F. Supp. 2d 261 (S.D.N.Y. 2007).............................8

*DS Bulk Pte Ltd. v. Calder Seacarrier Corp.*, No. 05 Civ. 10146, 2006 U.S. Dist LEXIS 39242 (S.D.N.Y. 2006) ..................................................................................8

*Egyptian Navigation Co. v. Baker Investments International Group*, No. 08 Civ. 2080, 2008 U.S. Dist. LEXIS 30804 (S.D.N.Y. 2008) ........................................................8, 9, 10

*International Marine Consultants Inc. v. Karavias*, No. 82 Civ. 8296, 1985 WL 1515 (CMM) (S.D.N.Y. June 3, 1985).............................................................................7

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600 (S.D.N.Y. 1997).......7

*T&O Shipping, Ltd. v. Source Link Co. Ltd.*, No. 06 Civ. 7724, 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) ..................................................................................8

## INDEX OF EXHIBITS

Exhibit A
*Verified Complaint dated May 11, 2007 in action, ST Shipping and Transport v. Golden Fleece, Docket No. 07 Civ. 3730*

Exhibit B
*Ex-Parte Order of Maritime Attachment and Garnishment dated May 11, 2007*

Exhibit C
*Docket Sheet for action, ST Shipping and Transport v. Golden Fleece, Docket No. 07 Civ. 3730*

Exhibit D
*Affidavit of John Keough dated December 10, 2007*

Exhibit E
*Wire Remittance Details for the Payments Attached*

Exhibit F
*Excerpt from Electronic Case Filing Rules and Instructions*

**PRELIMINARY STATEMENT**

Pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereafter "Supplemental Rule __") Defendant, Golden Fleece Maritime Ltd. (hereinafter "Golden Fleece or "Defendant"), and Third-Party Claimant, Blanca Shipmanagement Company (hereinafter "Blanca"), by their undersigned counsel, Lennon, Murphy & Lennon, LLC, submit the within Memorandum of Law in Support of their Motions to Vacate the Maritime Attachment obtained by Plaintiff, ST Shipping and Transport, Inc. (hereinafter "Plaintiff").

Blanca moves to vacate the attachment on the basis that it has the sole property interest in the attached funds. Golden Fleece moves to vacate the attachment on equitable grounds. That is, Plaintiff abused the attachment procedure by failing to reveal the existence of its other pending action in this District against Golden Fleece at the time this action was filed based on <u>claims arising from the very same charter party</u>.

Based on the accompanying Declarations of Nancy R. Peterson, Alexandra Chatzimichailoglou and Duncan McDonald and for the reasons set forth herein, the Ex Parte Order should be vacated and the attached funds released.

Under Supplemental Rule E(4)(f), "whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

Here, Plaintiff has not met its burden of showing that the particular funds attached constitute property in which Defendant Golden Fleece has an ownership interest. In fact, the funds attached in this matter were assigned to Blanca prior to the issuance of the Order of Attachment on December 28, 2008.

Blanca asserts that it is the legal owner of the funds attached at Citibank in New York and that Golden Fleece does not have a property interest in such funds. Consequently, this Honorable Court should vacate the attachment of Blanca's property, order the release of the funds attached pursuant to the Process of Maritime Attachment and Garnishment ("PMAG") issued in this matter and direct Citibank to release said funds to their rightful owner, Blanca.

Furthermore, given Plaintiff's blatant abuse of the attachment procedure discussed in more detail at Point III, *infra*, , the Court should exercise its equitable discretion to vacate the Ex-Parte Orders of Attachment issued against Golden Fleece and dismiss the instant case for lack of jurisdiction.

## FACTS

The facts pertaining to the instant Motions to Vacate Maritime Attachment and Dismiss the Complaint are more fully set forth in the Declaration of Nancy R. Peterson ("Peterson Decl."), the Declaration of Alexandra Chatzimichailoglou on behalf of Liquimar Tankers Management Inc (the manager of the ELLI) ("Chatzimichailoglou Decl."), and the Declaration of English Solicitor Duncan McDonald in support of the Motion. However, a short summary of the facts germane to this application is provided below.

Pursuant to a charter party dated May 30, 2003, Plaintiff chartered the ocean going motor vessel ELLI from Golden Fleece for the carriage of cargo. At that time, Golden Fleece was the owner of the ELLI. During the course of the charter, disputes arose between the parties regarding Golden Fleece's alleged failure to maintain the ELLI in its warranted condition.

Almost three years later, on or about May 10, 2007 Plaintiff initiated an action in the Southern District of New York against Golden Fleece seeking security for its claims under the May 30th charter party. The action was assigned to the Honorable Denise L. Cote under Docket

No.07-3730. In order to obtain security for its claims, Plaintiff applied for an Ex Parte Order of Maritime Attachment Garnishment against Golden Fleece's property within this District in the amount of $808,307.94, $250,000.00 of which represented Plaintiff's estimated attorneys fees and costs. *See Verified Complaint dated May 11, 2007 annexed hereto as Exhibit "A."*

Judge Cote granted Plaintiff's request for an Ex-Parte Order of Attachment. However, the amount of the Ex-Parte Order was reduced from $808,307.94 to $481,307.94. *See Ex-Parte Order dated May 11, 2007 annexed hereto as Exhibit "B."* Judge Cote, as a general rule, does not allow claimants security for unaccrued attorney fees and costs. Thus, the Ex-Parte Order signed by Judge Cote was issued in the amount of Plaintiff's principal claim only.

It appears that on or about August 22, 2007, Plaintiff attempted to dismiss this action by filing a Notice on the ECF system. *See Docket Sheet annexed hereto as Exhibit "C."* Submitting the "Notice" in this fashion clearly did not comply with the rules of this Court and did not dismiss the case. In fact, <u>Judge Cote did not dismiss Plaintiff's action against Golden Fleece until May 9, 2008</u>. Thus, until May 9, 2008, Plaintiff maintained an open, active attachment case against Golden Fleece before Judge Cote. Golden Fleece was neither served nor otherwise made aware of the action before Judge Cote.

In the meantime, in a transaction having nothing to do with Plaintiff, pursuant to a charter party dated December 8, 2006, Defendant Golden Fleece chartered the ELLI to non-party Indian Oil Corporation ("Indian Oil") for the carriage of cargo. *See Peterson Decl., ¶10.* Under the Golden Fleece-Indian Oil charter party, Indian Oil paid hire to Golden Fleece at regular intervals. During the course of the Golden Fleece-Indian Oil charter, Golden Fleece decided to sell the Vessel. *See Peterson Decl., ¶¶11-12.*

3

Pursuant to a Memorandum and Agreement ("MOA") and side letter dated October 26, 2007, Defendant Golden Fleece (Sellers):(1) agreed to sell the ELLI to Blanca (Buyers); and (2) assigned all future earnings of the ship under existing contracts/charter parties to Blanca. *See MOA and Side Letter annexed to Peterson Decl. as Exhibits "1" and "2" respectively.*

The Side Letter expressly states that "it is hereby agreed that after December 15th 2007 00:01 local time, Buyers shall be entitled absolutely to all payments of hire made to or to be made by charterers and all such payments shall be the absolute property of the Buyers and shall be held by the Sellers on behalf of the Buyers. The Sellers shall promptly account to the Buyers thereof in full and without deduction or set-off." *See Clause 1, Exhibit "2."*

The MOA provides that delivery was to take place on "January 17, 2008 up to end of current charter with Indian Oil Corporation dated December 8, 2006 as currently extended in Sellers' option. . ." And, the payment of the purchase price was to be made in full on delivery of the Vessel. *See Peterson Decl., ¶18.*

However, regardless of the delivery date, as set forth above, the Side Letter mandated that after December 15, 2007, the Buyers, Blanca, would be entitled to all payments of hire made by Charterers (Indian Oil Corporation) and the Vessel would, in effect be deemed to be delivered to the Buyers, although physical delivery and the closing would not take place until the end of the charter with Indian Oil. All future hire payments under the Golden Fleece-Indian Oil Charter Party were thusly duly and irrevocably assigned to Blanca.

In late December 2007, Plaintiff decided to initiate yet another action against Golden Fleece based on alleged breaches of the charter party of May 2003. <u>While its original action against Golden Fleece was still pending before Judge Cote</u>, on or about December 11, 2007,

4

Plaintiff filed its second Verified Complaint against Golden Fleece seeking security in the amount of $380,000.00 for its breach of charter party claims.

Plaintiff failed to file this action on a related case basis. In addition, Plaintiff's counsel falsely attested in his Attorney Affidavit in Support for Prayer for Maritime Attachment that "This application is the Plaintiff's *first* request for such relief made to any court." *See Affidavit of John Keough dated December 10, 2007 annexed hereto as Exhibit "D."*

Based on this false Affidavit, on or about December 28, 2007, Plaintiff obtained the second attachment order against Golden Fleece which it has been serving on banks in New York and pursuant to which it attached Blanca's funds. Notably, unlike the action before Judge Cote, the original Order of Attachment issued in this action included all of Plaintiff's estimated attorneys fees and costs in addition to the principal damage claims.

Pursuant to the Ex Parte Order of Attachment and Garnishment dated December 28, 2007, garnishee Citibank restrained three electronic funds transfers ("EFTs") in the amounts of $101,048.48, $271,600.87 and $7,350.65 on or about January 18, 2008, January 30, 2008, and March 17, 2008 respectively. All three EFTs were being sent by non-party, Indian Oil Corporation, to pay for charter hire in reference to the ELLI and are the sole and exclusive property of Blanca as Blanca had been assigned all rights to the charter hire for the ELLI as of December 15, 2007.

Defendant Golden Fleece did not (and does not) have a property interest in the funds held by Citibank. Therefore, Plaintiff's attachment of Blanca's funds in the amounts of $101,048.48, $271,600.87 and $7,350.65 at Citibank N.A., representing charter hire payments for the ELLI under the Golden Fleece-Indian Oil charter party, was improper and should be vacated.

5

# ARGUMENT

## POINT I

### IT IS PLAINTIFF'S BURDEN TO PROVE WHY THE ATTACHMENT SHOULD NOT BE VACATED

A Plaintiff that has obtained and an ex parte Rule B attachment order shoulders the burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty claim against the defendant." *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

In such cases, Local Admiralty and Maritime Rule E.1 provides:

> The adversary proceeding following arrest or attachment or garnishment that is called for in Supplemental Rule E(4)(f) shall be conducted by a judicial officer within three court days, unless otherwise ordered.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit Court of Appeals commented on Rule E(4)(f) in *Aqua Stoli* and established the following standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n5.

6

> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Aqua Stoli*, 460 F.3d at 445.

At the Rule E(4)(f) hearing, a defendant or a party claiming an interest in the attached property may challenge "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." *Aqua Stoli,* 384 F. Supp. 2d. at 728 (quoting Supp. R. Fed. Civ. P. advisory committee's notes). To satisfy the requirement of Rule B, the Plaintiff has the burden to show that: (a) it has a prima facie valid maritime claim; (b) the named defendant cannot be found within the district; (c) the named defendant's property was within the district; and (d) no other statutory or maritime law bar to the attachment. *Aqua Stoli,* 460 F. 3d at 445.

Furthermore, consistent with *Aqua Stoli* requirement (c) listed above, the property attached must belong to the named defendant and the plaintiff has the burden of proving the plaintiff is the owner of the property. *See, Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 607 (S.D.N.Y. 1997) *citing International Marine Consultants Inc. v. Karavias,* No. 82 Civ. 8296, 1985 WL 1515 (CMM), at *3-4 (S.D.N.Y. June 3, 1985). If the plaintiff fails to meets its burden of proving that the defendant owns the property attached, then the attachment must be vacated.

The attachment must be vacated because the "case law, the authorities, and basic logic demonstrate that no *quasi in rem* jurisdiction under Rule B can exist without some *res* to be attached. In fact, for a Rule B attachment to be appropriate, it is clear that the property must be located within the district and that the property must belong to the defendant." *Blueye Navigation v. Oltenia Navigation,* 1995 U.S. Dist. LEXIS 1844, *13 (S.D.N.Y. Fed 15, 1995)

7

(citations omitted); *see also Winter Storm Shipping Ltd. v. TPI*, 310 F. 3d 23, 276 (2nd Cir. 2005)("[o]f course, the defendant's entitlement to the credit or interest in the debt must be clear").

The case of *Dolco Investments, Ltd. v. Moonriver Development. Ltd*, 486 F. Supp. 2d 261 (S.D.N.Y. 2007) is instructive. In that case the "Plaintiff... failed on [the] record to establish that the EFT was the property of [the defendant] when received by [garnishee] Citibank." *Id.* at 269. The court went on to hold that because the plaintiff "failed to carry its burden of showing that the attached assets belong to [the defendant] . . . no property of [ the defendant] has been attached [and therefore] the attachment must be vacated." *Id.* at 270.

In the present case, the property that is being restrained by Citibank pursuant to the original Ex Parte Order and PMAG is the property of non-party Blanca, and not Defendant Golden Fleece and thus the attachment should be vacated. For the reasons set forth below, the Plaintiff cannot meet its burden of demonstrating that the attached funds are the property of the Defendant Golden Fleece.

## POINT II

### THE ATTACHMENT OF FUNDS RESTRAINED BY GARNISHEE CITIBANK MUST BE VACATED BECAUSE THE FUNDS BELONG TO CLAIMANT BLANCA

**A. A Rule B attachment does not reach property in which the named Defendant does not have an attachable property interest. Where a Defendant assigns property to a third party before the attachment order issues it no longer has an attachable property interest in those funds**

If a plaintiff cannot show that the property attached belongs to the named defendant, then the court must vacate the attachment. *See Egyptian Navigation Co. v. Baker Investments International Group*, No. 08 Civ. 2080, 2008 U.S. Dist. LEXIS 30804 (S.D.N.Y. 2008) *citing T&O Shipping, Ltd. v. Source Link Co. Ltd.*, No. 06 Civ. 7724, 2006 U.S. Dist. LEXIS 88153

8

(S.D.N.Y. 2006); *DS Bulk Pte Ltd. v. Calder Seacarrier Corp.*, No. 05 Civ. 10146, 2006 U.S. Dist LEXIS 39242 (S.D.N.Y. 2006).

Judge Stein directly addressed the issue of whether the property of an assignee is attachable for the debts of an assignor in the context of a Rule B attachment in *Egyptian Navigation, supra*. He held that where a defendant has assigned property to a third party, that property shall not be subject to an attachment by creditors of the defendant, as it is no longer the defendant's property. This is true notwithstanding the fact that the wire transfer references the named defendant's account information. *See Egyptian Navigation Co.*, 2008 U.S. Dist. LEXIS at *6.

A defendant is not deemed to have a property interest in funds simply because it is somehow connected to the underlying transaction. *See Daikan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782, 784 (S.D.N.Y. 1984) where the court held that the interest of a beneficiary in a letter of credit was not attachable as a debt or property since prior to the presentation of the conforming documents, the confirming bank is neither indebted to the beneficiary nor holds any of its property.

These rules apply with equal force to the facts of this case and therefore, the Plaintiff, cannot meet its burden to maintain the attachment of Blanca's funds because it cannot prove that Defendant, Golden Fleece, has a property interest in such funds.

### B. The hire payments made by Indian Oil for the charter of the Elli were validly assigned to Blanca as of December 15, 2007.

In *Egyptian Navigation, supra*, Judge Stein thoroughly discussed the validity of an assignment under English law, such as the one at issue in this case. "An equitable assignment occurs under English law when an assignor, with an interest to transfer his right to a chose in action, informs the assignee that the right is so transferred. Chitty §19-021; Phelps v. Spon-

Smith & Co. (2001) B.P.I.R. 326 P 36.(' It is not necessary for an equitable assignment to follow any particular form, but it is essential that there should be an intention to assign and some act by the assignor showing that he is passing the chose in action to the supposed assignee.') *Egyptian Navigation*, 2008 U.S. Dist. LEXIS 30804 at *14.

Here, as confirmed in the McDonald Declaration, the Side Letter between Golden Fleece and Blanca evinces an intent on the part of Golden Fleece to completely transfer its interest in hire payments under the Golden Fleece-Indian Oil charter party to Blanca. *See McDonald Decl.*, ¶6. Furthermore, notice to the debtor is "not a requirement of equitable assignment, which is effective to cut off the rights to the assignor once intention to assign is communicated to the assignee. Holt, 2 K.B. at 4-5; Chitty §§ 19-020, 19021." *Egyptian Navigation*, 2008 U.S. Dist. LEXIS 30804 at * 14-15.

Thus, by making an irrevocable and absolute assignment of charter hire under the Golden Fleece-Indian Oil charter party, Golden Fleece relinquished all property rights to those funds. Also under the terms of the Side Letter, the property rights to the charter hire payments made by Indian Oil after December 15, 2008 became vested in Blanca.

The three payments restrained at Citibank were made well after the assignment took effect (December 15, 2007), and the issuance of the Ex-Parte Order of attachment (December 28, 2007). In addition, all three wires represent hire being sent from charterer Indian Oil for the Golden Fleece-Indian Oil charter of the ELLI. The fact that Golden Fleece was the nominal beneficiary of the funds transfers does not change the fact that <u>Golden Fleece has no legal property interest in those funds.</u>

Charterer, Indian Oil, initiated all three EFT payments attached at Citibank. All three payments were made after December 15, 2007 and represent hire due and owing under the

Golden-Fleece-Indian Oil charter party. The first wire attached in the amount of $101,048.48 represents a payment for the hire invoice dated January 14, 2008. The second wire attached in the amount of $271,600.87 represents a payment for the hire invoice dated January 17, 2008. And, the third wire attached in the amount of $7,350.65 (out of wire in the amount of $271,600.87), represents a payment for the hire invoice dated February 13, 2008. *See Chatzimichailoglou Declaration, ¶8; See also Wire Remittance Details for the Payments Attached annexed hereto as Exhibit "E."*

As set forth in the McDonald Declaration, even had the funds arrived in Golden Fleece's account, Golden Fleece never would have obtained an attachable property interest in those funds, as it would be holding all hire payments made by Indian Oil in trust for Blanca. *See McDonald Declaration, ¶9.* Trust property is immune from claims of the trustee's private creditors. *Id.*

Under English law, no particular wording is required to create a trust. Wherever the intention to create a trust is apparent, it will be given effect. Here, as attested by Mr. McDonald, the facts establish that the wording of the Side Letter created a viable trust in relation to hire payments made by Indian Oil for the charter of the M/T ELLI. *See McDonald Declaration, ¶8.*

As a trust was created whereby Golden Fleece would hold the Indian Oil hire payments for Blanca, third party creditors of Golden Fleece, like Plaintiff, would not be entitled to attach them, even though Golden Fleece was the nominal beneficiary.

Blanca's property is being restrained at Citibank pursuant to the Ex-Parte Order of Attachment issued against Golden Fleece only. This is improper. As is readily apparent, Blanca is not a defendant in this action, is not named as a defendant in the Verified Complaint and the Attachment Order and is not in any way liable for Plaintiff's alleged claims Plaintiff will not be

11

able to carry its burden of showing cause why the attachment should not be vacated because Defendant, Golden Fleece, does not have an attachable property interest in the subject funds

Therefore, Blanca respectfully submits that Plaintiff's attachment of its funds, currently restrained at Citibank pursuant to the Ex-Parte Order of Attachment issued should be vacated.

## POINT III

### THE ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF ABUSED THE ATTACHMENT REMEDY

Plaintiff abused the attachment process in at least two ways: (1) it failed to file the instant case on a related case basis, providing Judge Cote with the option of accepting assignment of the case; and (2) its attorney made false representations in his Attorney Affidavit in Support of the Maritime Attachment. Where a plaintiff has abused the attachment process, vacatur is appropriate on equitable grounds..*See Chiquita Int'l Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589, 599-600 (S.D.N.Y. 2007). The due process rights of defendants are already severely circumscribed in the context of Ex-Parte attachment. Thus, violations of procedure are all the more grievous since the defendant does not have the opportunity to be heard.

Had Plaintiff filed the attachment on a related case basis and Judge Cote accepted the case she would have in all likelihood refused to grant Plaintiff's application for attorney's fees and costs. Plaintiff should not be allowed to forum shop for Judges to obtain more favorable results. Furthermore, Plaintiff's failure to reveal its pending action against Golden Fleece in its Affidavit is improper.[1]

---

[1] Plaintiff will no doubt argue that its "Notice" actually dismissed the case. This is belied both by the docket sheet indicating the true date of dismissal and by this Court's ECF Guidelines. *See excerpt from Electronic Case Filing Rules and Instructions annexed hereto as Exhibit "F."*

12

The Affidavit presented by Plaintiff's counsel ex parte to this Court was false and failed to disclose critical information to the Court with respect to the Defendant. Plaintiff is required to list all of the prospective defendant's contacts with the district, including any pending action where it may have obtained jurisdiction already.

It is universally accepted by the courts and, in fact, a due process requirement under Rule B, that before the district court may issue an ex parte order authorizing process of maritime attachment and garnishment, the plaintiff's counsel must submit an affidavit setting forth its efforts to determine the defendant's presence in the district. Supplemental Rule B states, specifically, as follows:

> The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Supplemental Rule B. Local Rule B.1 goes further, imposing the following requirement:

> The affidavit required by Supplemental Rule B(1) to accompany the complaint, and the affidavit required by Supplemental Rule B(2)(c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

Loc. Adm. R. B.1. A review of the Affidavit submitted by Plaintiff's counsel to this Court highlights the violation of Golden Fleece's due process rights. Not only did the Affidavit fail to disclose the then pending action against Golden Fleece before Judge Cote, it materially misrepresented the facts by stating affirmatively that this was Plaintiff's first request for this type of relief to this or any other court.

In *Winter Storm Shipping, Ltd. vs. TPI*, 310 F.3d 268, the Second Circuit discussed the importance of the minimal due process rights of defendants under Rule B:

13

> Notwithstanding the unanimity of the post-*Shaffer* appellate decisions upholding the constitutionality of Admiralty Rule B, the drafters of the rules amended Rule B(1) in 1985 in order to address any possible due process concerns. While the practice of granting maritime attachments on an *ex parte* basis remains, Rule B(1) now requires the plaintiff to appear before a judge to procure an attachment. *See* Rule B(1)(b) ("The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment."). The Advisory Committee Notes to the 1985 amendments explain their purpose:
>
>> Rule B(1) has been amended to provide for judicial scrutiny before the issuance of any attachment or garnishment process. Its purpose is to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court (citing cases).

*Winter Storm*, 310 F.3d at 271-272. Plaintiff's misrepresentations of fact deprived Golden Fleece of its minimal due process rights. As Judge Sullivan recently discussed in *Centauri Shipping Ltd. v. Western Bulk Carriers, KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007)"

> the Court notes that Counsel's conduct is of particular concern where, as here, Counsel appeared "before a Judge seeking extraordinary relief *ex parte* . . . ." *Four Star Fin. Servs., L.L.C. v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001) (Martin, J.). Like Judge Martin, this Court emphasizes the fact that [a]ttorneys are officers of the Court, and our system of justice cannot operate efficiently" if the Court is unable to rely on counsel in an *ex parte* proceeding to work diligently to ensure the accuracy of his representations to the Court. *See id.*

*Centauri Shipping*, 528 F.Supp.2d at 201. Judge Sullivan declined to sanction the plaintiff's lawyer, who had submitted a false Rule B affidavit, but aptly concluded:

> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But[] it is premised on the assurance that plaintiffs and their counsel will act with care and candor in *ex parte* proceedings with the court. That clearly did not happen here.

*Id.* at 203. The situation in this case with the Attorney Affidavit submitted to the Court ex parte is no different.

14

Accordingly, because Rule B attachment is an equitable remedy, and Plaintiff has acted most inequitably in violating Golden Fleece's due process rights and otherwise not following proper procedure, the attachment should be vacated and the Verified Complaint should be dismissed for this reason alone.

## CONCLUSION

For the foregoing reasons, the Court should vacate the attachment, direct Citibank to release the restrained funds to Blanca and instruct the Plaintiff to modify the Ex-Parte Order such that no further property of Blanca will be attached in the future. In the alternative, this Court should vacate the attachment on equitable grounds and dismiss the case for lack of jurisdiction.

Dated: July 3, 2008
      Southport, CT

                                   Third Party Claimant,
                                   BLANCA SHIPMANAGEMENT COMPANY and

                                   Defendant,
                                   GOLDEN FLEECE MARITIME INC.,

By: _____
                                   Patrick F. Lennon
                                   Nancy R. Peterson
                                   LENNON MURPHY & LENNON, LLC
                                   The GrayBar Building
                                   420 Lexington Ave., Suite 300
                                   New York, NY 10170
                                   (212) 490-6050 (phone)
                                   (212) 490-6070 (fax)
                                   pfl@lenmur.com
                                   nrp@lenmur.com

## **AFFIRMATION OF SERVICE**

I hereby certify that on July 3, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Nancy R. Peterson