UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST SHIPPING AND TRANSPORT, INC.,

      Plaintiff,

  - against -

GOLDEN FLEECE MARITIME INC.,

      Defendant.

BLANCA SHIPMANAGEMENT COMPANY,

Third-Party Claimant,

------------------------------------------------------------X

07 Civ. 11147 (SAS)

ECF CASE


# REPLY MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY BLANCA SHIPMANAGEMENT COMPANY'S AND DEFENDANT GOLDEN FLEECE MARITIME INC.'S MOTIONS TO VACATE MARITIME ATTACHMENT

Lennon, Murphy & Lennon, LLC
Attorneys for Defendant Golden Fleece Maritime Ltd.
Attorneys for Third Party Claimant Blanca Shipmanagement Company
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170

**PRELIMINARY STATEMENT**

Pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereafter "Supplemental Rule __") Defendant, Golden Fleece Maritime Ltd. (hereinafter "Golden Fleece or "Defendant"), and Third-Party Claimant, Blanca Shipmanagement Company (hereinafter "Blanca"), by their undersigned counsel, Lennon, Murphy & Lennon, LLC, submit the within Reply Memorandum of Law in Support of their Motions to Vacate the Maritime Attachment obtained by Plaintiff, ST Shipping and Transport, Inc. (hereinafter "Plaintiff").

At the outset, it should be noted that Blanca is not a Defendant in this matter. Blanca is merely an interested party whose funds have been attached. Plaintiff has not alleged any claim against Blanca. Thus, Plaintiff's recitation of its burden under *Aqua Stoli* <u>in terms of showing a prime facie valid maritime claim is not relevant here</u>. Rather, in order to survive Blanca's motion to vacate, Plaintiff needs to affirmatively show that the named Defendant, Golden Fleece, has a <u>clear</u> interest in the funds attached. Plaintiff needs more than mere allegations and conjecture to show that the funds attached constitute property of Golden Fleece.

Neither Golden Fleece nor Blanca have alleged in the present motions that Plaintiff has failed to allege a prima facie valid claim. Nevertheless, in its opposition papers, Plaintiff continually addresses its burden to show a prima facie valid claim. This is a red herring. Plaintiff must not merely "allege" that the property attached belongs to a named Defendant or that it is theoretically possible/plausible the named Defendant has a beneficial interest in the funds attached. Rather, Plaintiff must affirmatively show that the named Defendant has a <u>clear</u> interest in the property in question. *See generally Egyptian Navigation Co. v. Baker Investments Corp.*, 08 Civ. 2080 (SHS), 2008 U.S. Dist. LEXIS 30804 (S.D.N.Y. April 14, 2008)(granting

1

motion to vacate as plaintiff failed to affirmatively prove that the funds attached belonged to the named defendant, notwithstanding the fact that plaintiff continually alleged that the named defendant had a beneficial interest in the funds attached).

Plaintiff has failed to cite one case showing that Plaintiff may restrain the funds of an interested party, <u>who is not named in the complaint</u>, merely because it alleges that the named Defendant has an interest in those funds. This is because in the context of a motion to vacate the attachment brought by a non-party the plaintiff has the affirmation burden to prove that the "defendant's property may be found within the district." *Aqua Stoli,* 460 F.3d at 445. Here, Plaintiff has failed to show that the EFT restrained by Citibank was the property of the named defendant, Golden Fleece. On the contrary, it was the property of non-party Blanca. As a result, the attachment of the EFT restrained by Citibank should be vacated.

Plaintiff conveniently glosses over its burden to prove that the Golden Fleece has a property interest in the funds at issue here, reciting labels like "prima facie" and "probable cause." However, the simple fact remains that Plaintiff has failed to submit any evidence which would rebut Blanca's showing that Golden Fleece does not have a beneficial interest in the funds. Thus, the attachment cannot stand.

## ARGUMENT

### POINT I

**PLAINTIFF HAS FAILED TO MEET ITS BURDEN TO SHOW THAT GOLDEN FLEECE HAS A CLEAR INTEREST IN THE PROPERTY ATTACHED**

In order to survive the instant motion, Plaintiff must affirmatively show that Defendant has a clear attachable property interest in the funds attached. It is not enough that a wire may have some relationship to the Defendant. See e.g. *Prime Shipping Co. v. Wajilam Exps. PTE. LTD,* 06 Civ. 1183 (JSR), 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006)(vacating attachment of

2

funds moving under letter of credit referencing named defendant as plaintiff failed to show that defendant had a clear, attachable property interest therein). If the plaintiff does not produce sufficient evidence to show that defendant has a clear interest in the funds attached, the attachment must be vacated. Mere allegations of ownership and conjecture by the plaintiff are not enough to show that a defendant has an attachable interest in the funds in question. *See Egyptian Navigation Co.*, 2008 U.S. Dist LEXIS 30804.

Here, Plaintiff has failed to carry its burden of demonstrating that the funds restrained by Citibank are the Golden Fleece's property, rather than the property of non-party Blanca. As set forth in the Declaration of Duncan McDonald accompanying the Motion to Vacate, <u>Golden Fleece did not have a beneficial proprietary interest in the funds attached</u> as the Side Letter to the Memorandum of Agreement for the sale of the Vessel M/V ELLI executed by Golden Fleece and Blanca gave rise to a trust, whereby Golden Fleece (sellers) would hold all hire payments under the time charter with Indian Oil in trust for Blanca (buyers). After the creation of the trust, the hire, as trust property, became immune to claims by creditors of the Sellers, such as Plaintiff. In support thereof, Blanca produced several documents including, but not limited to, the Memorandum of Agreement and Side Letter (which gave rise to the trust) and statements from Golden Fleece (through its English counsel), Blanca (through its New York counsel)[1] and Liquimar, the Vessel's manager.

---

[1] Plaintiff challenges the Declaration previously submitted to this Court by undersigned counsel on the basis that this information must come from Blanca directly. The Declaration was in fact created from information and documents provided by Blanca. While the Declaration submitted is admissible in these proceedings, to ease Plaintiff's concerns, Blanca has affirmed all of the statements set forth in the previous Peterson Declaration. Please find attached hereto as Exhibit "A" the Declaration of Mr. Marios Iliopoulos attesting to the details of the vessel sale previously set forth in the Declaration of Nancy R. Peterson.

Plaintiff has failed to submit any documentation to rebut the evidence submitted by Blanca showing that a trust was created under English law and Golden Fleece does not have a beneficial proprietary interest in the funds attached. Plaintiff merely <u>suggests</u>, without providing any substantiation, that it is theoretically possible that a valid trust was not created. Just because Plaintiff posits there is a possibility that the funds attached could belong to Golden Fleece does not make it true. Blanca has explained the factual basis of the transaction underlying the transfer of the funds currently under attachment and the validity thereof. Plaintiff has failed to rebut Blanca's explanation with any evidence to the contrary.

Furthermore, as set forth in the Second Declaration of Duncan McDonald dated August 4, 2008, Plaintiff's attempts to attack the legal basis of the trust are baseless and should be disregarded.

### Golden Fleece has no beneficial interest in the funds attached under English law and Plaintiff's arguments to the contrary should be disregarded

Plaintiff's English counsel, Mr. Edward Mills-Webb, challenges the legal basis of the trust on two grounds. First, Mr. Mills-Webb argues that based on the language in the operative documents, the parties possibly did not express an intent to create a trust. *See Mills-Webb Declaration, ¶13*. However, Mr. Mills-Webb's opinion is belied by his own further statements in this regard. In particular, Mr. Mills-Webb concedes in the same paragraph that no special language is needed to create a trust under English law. *See Mills-Webb Declaration, ¶13*. Thus, his opinion that the parties could be deemed to have not expressed an intent to form a trust is mere conjuncture.

Moreover, his conjecture is demonstrably false. As confirmed by Mr. McDonald "the wording of the Side Letter could hardly be clearer as to the intention of the parties thereto: it declares (clause 1) that the Buyers will be "*entitled absolutely*" to all hire, which shall be "*the*

4

*absolute property*" of the Buyers and will be "*held by the Sellers on behalf of the Buyers*". The Sellers are to "*promptly account to the Buyers...in full and without deduction or set-off*". Under English law, this language clearly creates a trust in favour of the Buyers." *See Second Declaration of Duncan McDonald, ¶17.* Thus, the facts and documentation submitted by Blanca support Blanca's position that a trust was indeed created.

However, this Court need not decide between competing opinions under English law as to this issue, <u>as Mr. Mills-Webb does not even claim a lack of the requisite intent or that under the facts that a trust was not created</u>. He merely states that trusts are often created in a different fashion and that one could make an argument that a trust was not created. This is a far cry from showing that Golden Fleece has a clear proprietary interest in the funds attached.

Second, Mr. Mills-Webb claims that a trust cannot be created where a trust beneficiary is not named and/or the trust property is uncertain, which he believes could be the case here. Mr. McDonald directly addresses these arguments in his Second Declaration and clarifies that these are non-issues. Here, a fixed trust was created (as opposed to a discretionary trust) and both the beneficiary and trust property were sufficiently certain so as to create a valid trust under English law. *See Second McDonald Declaration, ¶26.* Particularly, here, Mr. McDonald confirms "[t]here is no difficulty at all in identifying the beneficiary at the time when the hire is payable: it is the Buyers or (if a nomination has been made by the Buyers) the company nominated by them to receive the hire." *Id.* As to the certainty of the trust property in the instant case, he states as follows:

> In the circumstances, it is abundantly clear that the trust property is the hire payable to Golden Fleece by IOC under the time charter of the "ELLI" dated 8th December 2006, and I would bring to the Court's attention that in paragraph 19 of his Declaration Mr Mills-Webb clearly accepts (notwithstanding his suggestion that the trust property is not sufficiently identified) that the time charter hire under the 8th December 2006 charter <u>is</u>, in fact, sufficiently identified as the property. In

5

that paragraph, in the course of suggesting that the Side Letter creates an assignment of hire (rather than the creation of a trust), Mr Mills-Webb has stated that it is an assignment of the future hire payments to be received by Golden Fleece from the charterparty, *"presumably"* being the existing charter with the Indian Oil Corp.

*Second Declaration of Duncan McDonald, ¶31.*

Furthermore, even if (as Mr. Mills-Webb has asserted) the Side Letter constitutes an equitable assignment of the charter party hire, under English law the assignment will not be subject to attachment or garnishment by any creditor of Golden Fleece, and under English law any order freezing the assets of Golden Fleece would be varied to allow payment of the hire to the Buyers (Blanca) or their nominee. *See Second Declaration of Duncan McDonald, ¶48.*

Finally, it is noteworthy that there is applicable federal law addressing this issue. In *Egyptian Navigation Co. v. Baker Investment Corp. et. al.,* 08 Civ. 2080 (SHS), 2008 U.S. Dist LEXIS 30804 (S.D.N.Y. April 14, 2008) Judge Stein found that notwithstanding plaintiff's arguments that the assignment at issue was not valid, that the attachment <u>could not stand</u>. The plaintiff in *Egyptian*, as in this case, could simply not show that the property attached belonged to the Defendant and/or that the assignment was invalid. It merely offered insinuations, speculation and conjecture, but did not offer any compelling evidence. As the plaintiff could not affirmatively show that the defendant had a clear, attachable property interest in the attached funds, Judge Stein vacated the attachment.

By executing the Memorandum and Side Letter, creating a trust for the hire payments under the charter party, Golden Fleece divested itself of any property interest in the funds attached, all of which are property exclusively belonging to non-party, Blanca.

As Plaintiff has failed to carry its burden to show that Golden Fleece had a clear, attachable property interest in the funds held by Citibank, the attachment should be vacated.

## POINT II

## THE CASES CITED BY PLAINTIFF ARE NOT RELEVANT TO THE INSTANT MOTION AND/OR ARE DISTINGUISHABLE

As set forth above, Plaintiff has the burden of showing that the funds attached belong to a named defendant. In an attempt to lighten its burden, Plaintiff claims that "decisions in this District have rejected the contention that an attachment can be vacated when the funds being transferred to a defendant's account actually belong to another." *See Plaintiff's Opposition Memo, p. 9.* This is incorrect and flies in the face of one of the express requirements set forth in *Aqua Stoli*, namely that a plaintiff is required show that the defendant has property in the District. The decisions Plaintiff cites stand for the limited proposition that where a named Defendant has a clear beneficial property interest in the funds at issue, those funds may be subject to attachment. It cannot be seriously questioned that where a non-party submits evidence showing that the funds do not belong to the named defendant, that the attachment must be vacated. To hold otherwise would authorize the illegal seizure of funds without due process of law. Claimants would be unable to redress the wrongful attachment of their funds.

Tellingly, Plaintiff **does not contend (or event suggest)** that a plaintiff can attach property held in trust for debts of the trustee. Nonetheless, here, Plaintiff would have this Court ignore the requirement that it show that Golden Fleece has a clear, attachable property interest in the subject funds. Plaintiff's position is illogical and untenable. It is only logical the Plaintiff be required to show that the property attached belongs to Golden Fleece in order to maintain the attachment. Otherwise, any and all property would be subject to attachment on a plaintiff's whim, without the due process of law.

While Plaintiff claimed that Golden Fleece's funds were attached, Blanca rebutted Plaintiff's claims with evidence that the funds attached were in fact held in trust and that Golden

7

Fleece has no beneficial interest in them. Plaintiff has failed to submit any evidence to contradict Blanca's showing. Thus, the attachment must be vacated.

Plaintiff also attempts to bolster its position by citing several cases involving alter-ego allegations made in the context of a Rule B attachment. These cases are totally irrelevant here, as alter-ego has not been alleged (nor could it be in good faith).

Plaintiff would like the Court to find some sort of conspiracy in the sale of the vessel, stating without a shred of credible evidence that Golden Fleece hoped to flee any judgment issued against it. Plaintiff's scurrilous theories are unfounded. As attested to by Mr. McDonald, Golden Fleece has paid the judgments issued in Plaintiff's favor, even after the sale of the Vessel. *See Second Declaration of Duncan McDonald,* ¶¶7-8. Furthermore, the Vessel, a single hulled tanker, was sold due to increasing difficulties in trading such vessels in light of changes in the Marpol regulations, not because of any fear of judgments to be issued in the future. *Id.* In any event, all of Plaintiff's conspiracy theories are irrelevant as it has not alleged in the original or amended verified complaints that Blanca is an alter-ego of Golden Fleece.

## POINT III

### PLAINTIFF NEITHER VALIDLY DISMISSED THE PRIOR CASE AGAINST GOLDEN FLEECE NOR ADEQUATELY DISCLOSED IT TO THE COURT

Plaintiff's arguments as to the dismissal and disclosure of its prior pending case against Golden Fleece are based on false assumptions. In particular, Plaintiff relies on the two following invalid assertions: (1) a party can dismiss a case without regard to any of the administrative requirements of the Court; and (2), it is not required to disclose prior actions between the same parties to the Court. Both assertions are false.

Plaintiff cannot dismiss a case by submitting a dismissal in any manner it chooses. If a plaintiff executed a notice of dismissal and dropped it on the Court house steps, or nailed it to the

8

Clerk's door, the case would surely not be dismissed. In the same way, posting a notice of dismissal randomly onto the ECF system in contravention of the Court's procedures does not dismiss a case either. There are a myriad of ways one could make the ECF system upload any piece of paper. One merely needs to select any menu choice (such as notice) and then submit. Plaintiff forced the ECF system to upload its dismissal, but the bottom line is that the case remained active and pending, as the docket entries make clear.

Further, Plaintiff's misstates the disclosure requirement for prior related actions filed in the Southern District of New York. As set forth in the standard civil cover sheet form for the Southern District of New York, the following question must be answered when filing a new matter: "Has this or a similar case been previously filed in SDNY at any time? No ☐ Yes ☐". If the Answer is "YES", a filer must provide the date and case number of the previously filed case. *Please find attached hereto as Exhibit "B" a redacted civil cover sheet for the SDNY filed in an unrelated matter about the same time as Plaintiff's first action against Golden Fleece.*

Because the two cases against Golden Fleece were clearly similar and related, Plaintiff was undoubtedly required to disclose the action filed against Golden Fleece in May 2007 on the civil cover sheet for the action filed against Golden Fleece in December 2007.

In addition, Plaintiff fails to address why it did not mention the pending action filed against Golden Fleece in May 2007 in its Affidavit in Support of the Maritime Attachment submitted in the December 2007 action against Golden Fleece. Supplemental Rule B requires that a claimant shall list the efforts made by and on and behalf of the plaintiff to find and serve the defendant within the district. A prior or pending action which requests a rule B attachment would certainly qualify as an effort to serve the defendant.

9

Where the affidavit is defective, the Court may validly vacate the attachment. *See Centauri Shipping Ltd. v. Western Bulk Carriers, KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007). In *Centauri,* the plaintiff argued that the attachment should be maintained because even had the omitted information been included, the Court would not have found the defendant present. The Court responded that the plaintiff was not entitled to make such an assumption. And, as the Affidavit did not include certain facts relating to defendant's contact with the District, it was defective and the attachment was vacated.

Accordingly, because Rule B attachment is an equitable remedy, and Plaintiff has acted most inequitably in failing to follow proper procedure, the attachment should be vacated and the Amended Verified Complaint should be dismissed for this reason alone.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate the attachment, direct Citibank to release the restrained funds to Blanca and instruct the Plaintiff to modify the Ex-Parte Order such that no further property of Blanca will be attached in the future. In the alternative, this Court should vacate the attachment on equitable grounds and dismiss the case for lack of jurisdiction

Dated: August 4, 2008
    Southport, CT

                        Third Party Claimant,
                        BLANCA SHIPMANAGEMENT COMPANY and

                        Defendant,
                        GOLDEN FLEECE MARITIME INC.,

By: _____/s/_____
     Patrick F. Lennon
     Nancy R. Siegel
     LENNON MURPHY & LENNON, LLC
     The GrayBar Building
     420 Lexington Ave., Suite 300
     New York, NY 10170
     (212) 490-6050 (phone)
     (212) 490-6070 (fax)
     pfl@lenmur.com
     nrs@lenmur.com

11

## AFFIRMATION OF SERVICE

I hereby certify that on August 4, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Nancy R. Siegel